418-0777. Several folks versus the City of Mattoon. I'll just leave it at that. For the appellant is Jennifer Stewart. You are she, ma'am? Yes. And for the appellee is Michael Reeses. Yes. Is that pronounced correctly? Yes, we did. Okay, well, lucky guess. Thank you. Okay, Ms. Stewart, you may proceed. Thank you. Your Honor, as I'm sure this Court is well aware, that this matter revolves around retiring health insurance benefits and continuation coverage under the Illinois Insurance Code, specifically provisions 215-5-367-FGJ. And while I believe that all of the I am going to focus my argument primarily on the issue of standing, as I believe that that's a very important issue that we need to address today. Well, before you do that, I have some questions. It seems to me that assuming you're standing, and I read over the decision of Judge Garst with a very complicated case and I thought it was very helpful and indeed kind of the trial judge to take the time that he did to write this out. But it seems to me that he's given a lot of thought, written extensively on the application of the statute of frauds in this case. And whether you're standing or not, let's assume you do, wouldn't the statute of frauds, if the trial court is correct, that it applies here, that's pretty much it, isn't it? I mean, that prompts everything, doesn't that? Oh, no, I don't think so, Your Honor. I think if the court determines that the Pratt plaintiff's doing a standing, that they can proceed under the provisions of the Illinois Insurance Code and seek declaratory judgment along with an award. So the statute of fraud applies. It doesn't apply to all your claims. Somehow there are and survive the statute of frauds? Yes, I don't believe the statute of frauds applies to any of the claims. Well, no, no, I want to be more, maybe I'm not being clear. Let's assume the statute of frauds applies. What claim can you, have you made that can survive the application of the statute of frauds that we agree with the trial court that applies in this case? I don't think the statute of frauds applies to the application of the actual statutes. I think that's a written document that survives. No, counsel, that's, maybe I'm not being clear here. I'm asking you hypothetically. I know you would say and you argue the statute of fraud doesn't apply. The trial court thought it did. I want to get into whether he was correct and I'll ask you about that. The first question is, if it does, do you have any claims that can survive the trial court's determination that the application that the statute of fraud applies? It seems to me it's a matter of just basics. Nothing can. Now if I'm misunderstood, misunderstanding that, this is your chance to explain it to me. And I was, I think I was trying to answer it but maybe not related to court. Okay. I don't believe that the statute of frauds bars the plaintiffs from proceeding on those products of action to enforce the Illinois insurance code. I don't think that's a situation where the statute of fraud applies. The statute of frauds would apply if there was no writing, if there were no clear terms of provisions. What clear terms and provisions of the agreement exist in those three statutory provisions? Those three statutory provisions provide all of the terms and that those terms are that... Do they even reference health care? Yes, that the retiree should receive health care benefits at the exact same cost and rate with no discrimination or distinguishment distinction and a premium cost or waiver of premium costs as active employers. That is the language of the statute that's so important. I think those terms and provisions are absolutely critical. I don't believe the statute of frauds has an applicability in that situation. Judge Gerst wrote on page five of his order that with regard to the statute of frauds, the matters at issue of this claim have to be in writing but they could be in different locations, different documents. But as he wrote, I found that these accounts should be dismissed. The violation of statute of frauds, the essential term to be enforced that the city would pay the same rate on health insurance as they pay for active employees, was never committed to writing. In other words, this key point was never in writing in any of these documents and he concluded the writing in any of these documents. It was in writing in the documents that were provided to the plaintiff, specifically a questionnaire. That questionnaire was attached and provided as a part of the documents which are in the appendix. Some of those are questions that were asked at the August 20, 2001 informational meeting. Other documents that were provided to the employees were the IMRS handbook. The IMRS handbook specifically referenced the statutes which I'm discussing today, which are 215-367-FGWJ. All of those are referenced in those documents that were provided to the plaintiffs and are forming the basis of the contractual agreement. Well, I'm sorry. You're having to get into your argument before I ask these questions and I don't want to take up any more of your time, so you may go ahead. Thank you. As I've stated, I think the important language of the sections of the Illinois Insurance Code specifically state that continued group insurance coverage shall be provided in accordance with this section at the same premium rate from time to time charged for equivalent coverage, provided under the group policy with respect to the coverage of all men, police officers, and uniformed employees whose retirement has not begun, and no distinction or discrimination in the rate of premiums or in favor of premium or other benefit provision shall be made. I think maybe I misstated my question or maybe misinterpreted one of the two. What language is there in any of those statutes that requires the municipality to contribute to the premiums at all? Well, I think by asking that question in court, it sets the language that the defendant reminds us to accept, which is that there needs to be some language that says employer contribution. This language... So the answer to the question is there isn't it? It does not say employer contribution or employee or retiree share. Okay, so that's got to come from somewhere else, right? Well, I think the point of the statute is there's not supposed to be any difference, distinction, or discrimination in that amount whatsoever. In the amount, but it doesn't say anything about contributions and percentages of contributions. So as long as the cost is the same, and as long as the benefit is the same, then they meet the statute, don't they? No, I believe that the cost that we're speaking of is the cost to the retiree or to the employee. Does it say that? It doesn't say anything about employer contribution or employee share either. That's my point. So we got to get that from somewhere else, don't we, to claim there's a contract? No, I believe that the language is clear that it should be the exact same for the employee and retiree. Okay, so to make sure I'm clear, you say the entire case is based on those three statutes and you don't need anything else? I think the entire case is centralized around these provisions. So if it turns out that this doesn't create a private cause of action, that you have no standing, then we're done, right? I think there are still the contract provisions. Well, but you just told me it's all on the statutes. I asked you, in order to have a contract, then don't we have to get other language from somewhere else? And you said, no, it's all here in the statute. I understand the court's position on this. It is the plaintiff's position, however, that the language is clear that the employee should be, the retiree should be treated the same as the active employees. So the active employees, through a collective bargaining process with the employer, who the defendant's sitting next to, agree to a certain employer contribution amount, and that that should be provided at the same cost, the health insurance plan, this should be provided at the same cost to the retirees. And I believe that language is all contained within these statutes. I don't think that that language is included. So I guess we're back to where we started. Everything that creates your cause of action, you say, exists in these three statutes and you need nothing else? Yes, Your Honor. Okay. Your Honor, we've cited several cases in our briefs. Specifically, we referred to the Fountain Sabbath case, as well as the Boncombe case. In Fountain Sabbath... Tell me how Fountain Sabbath gives you standing. I don't even remember seeing the word standing in that case. Well, the Illinois Supreme Court specifically allowed a private right of action. No, it was a declaratory judgment action asking for a declaration as to whether there was coverage under the policy. It didn't create a separate cause of action. They just said the plaintiff wants to know whether, in fact, this insurance policy covers them, since there is an exclusion and the person who's excluded is the one who is involved. So it was a declaratory judgment action as to the nature of the policy. It didn't create a separate private cause of action for the individual. One of the requested claims for the plaintiff was a declaratory action asking the court to determine whether or not the defendant had to adhere to the provisions of 215-367-GF&J as we've interpreted them in the Membership Court by them at the same rate as active employees. While the issue of standing is not thoroughly addressed in that case... Okay, wait a minute. Not thoroughly addressed? No, no, it's not addressed at all. By allowing the plaintiff, though, to proceed to have declaratory judgment, is the court not then accepting that there is standing to pursue that? No, not a separate private cause of action. You're asking for declaratory judgment on whether there's coverage in insurance policy. That's entirely different. In my humble opinion, that's entirely different than saying this gives you a separate cause of action, separate and distinct from the insurance policy coverage for whatever it is you want to pursue. And that seems to be what all the cases, other than this one you cite for standing, all say differently, that there is no private cause of action. The Supreme Court said that several times. The insurance code doesn't create a separate private cause of action because it's regulated through the director. Unless there's language specifically providing for a separate private cause of action, statutes aren't supposed to be construed in that fashion, they say. Well, the plaintiff wrote a letter to the Department of Insurance and asked them for assistance in this encounter. The Department of Insurance responded with a letter, and I put this in my reply brief, specifically stating that they'd better and greater get involved in their client litigation and did not get involved in this matter. And if there's no private right of action in the insurance code, then it would seem that the legislature has created a statute that's not going to be enforced. Well, it's not the only one. It's not being enforced by private individuals, it's being enforced by the director of insurance. And there are a number of other statutory provisions that give that authority to other entities. It just says there's no private cause of action, that's all. Well, if we look at the Marconi case, I think I'll be cited to another point. In that case, it's a third district case where they allow a private right of action to enforce provisions of health insurance benefits. And the Marconi court specifically discusses the sections of the statute which the plaintiffs are proceeding under today. The court in that case specifically stated that the plain language of the statute is the indicator, is the best indicator of legislative intent, and that the statutes are very clear as to legislative intent, that it creates a floor, that what the city of Joliet was doing in that case was providing their retirees with the exact same benefits at the exact same cost to their clients. That's exactly what the plaintiffs are asking the city of Mattoon to do. In that case, however, there was a collective bargaining agreement that specifically addressed retirees and allowed retirees a greater amount of benefits than most of the actual benefits. We are not asking for greater benefits. The retiree of the city of Mattoon is simply asking for the same benefits. Is there a collective bargaining agreement in this case to cover retirees at all? There is not. Isn't the fundamental issue in this case the fact that we had all these people working for the city of Mattoon who were given this offer, and the issue for them was whether the city would pay the same rate in health insurance for retired people in this office as they would for actual employees, and they think the city talked to them about it and made those representations, but it was never committed to writing. They should have mentioned, they have said at some point to the city, you've made these representations, we think, put it in writing. Well, actually, in 2001, there was a resolution that was passed by the city of Mattoon when they first adopted the early retirement incentive program through the IMRF, and that resolution had the retirees receiving the benefits at the same rate as Mattoon employees. They still are, aren't they? No, they are not. The retirees who receive a pension above the amount of $6,000. Well, yeah, other than the cutoffs that they've created. Yes. You're not suing on that. No, I am not. Okay. Some of the retirees are still receiving the same benefits, but we represent that portion who are not receiving the same benefits, who are paying more for their health care coverage. Well, I mean, this was an arrangement suggested by the city that the employees involved accepted, and one of the concerns was whether or not they would get the same rate of health insurance as active employees. Someone could have said, that's what you're representing to us, put it in writing. This case would never arise under those circumstances, wouldn't it? Or maybe the city said, no, we had no intention of doing that, in which case the employees might not have adopted or accepted the offer. Isn't that essentially what this is all coming down to? Essentially. Well, you know, what's troubling is you're essentially asking us to protect people from themselves for their making these major decisions, and there's not just one, several of them, without either getting the wisdom of this lawyer standing in front of us right now. I suspect you would have said, wait a minute, folks, let's do this the right way, as opposed to the practitioner equivalent of following the elephants in the haystack with what's happened, and you're trying to do the best you can with it, but it's not a sympathetic position, is it? I believe it is, Your Honor. These people are on fixed incomes. They had an understanding, and that understanding was that that resolution back in 2001 that created the equal amount of contribution and the equal as the active employees, that was going to remain. I don't blame them for the understanding, and under the circumstances, maybe that's appropriate and legitimate and all that, but an understanding of an issue that's really critical, you know, you don't have to be a lawyer to say, I want this in writing, or maybe I'll talk to Ms. Stewart, who's this great lawyer, and ask her, and you would have said, yeah, it's a good idea, put it in writing, but no one did that. Well, I think that I need to move on to my claim for unjust enrichment. Okay, sure, go ahead. If this court is going to determine that there is no agreement, no contract, or anything of that nature, not allowing plaintiffs to stand in the pursuit of an insurance code, then I would ask that the court consider the plaintiff's position on unjust enrichment, which is an equitable remedy, which is open to the plaintiffs, and then there is no other way for the plaintiffs to seek redress for the injuries which they've sustained. I believe that the plaintiffs should be entitled to proceed on their unjust enrichment claim, and I'd ask that this court please reverse the trial court and judge Dara's decision on that, and allow the plaintiffs to proceed on what they've called, at least, about unjust enrichment, but I would prefer to reverse all the plaintiffs. Thank you. Thank you, counsel. Mr. Reeses? Did I pronounce that again correctly? You did, Your Honor. Reeses, okay, thank you. Good morning, and may it please the court. My name is Mike Reeses, again, and I represent the city of Mattoon. Plaintiff's claims are based on, one, violations of the insurance code, two, breach of oral contract, or contracting, if that's how they want to term it, promissory estoppel, unjust enrichment, and three, the pension protection clause of the Constitution. I'm not going to address every one of those claims this morning, because the oral argument has kind of focused on some claims, and the extent of other claims, so I'm just going to address the claims that we're talking about here, and we do submit that the trial court properly dismissed all of the claims under sections 2-615 and 2-619. First, let's talk about the statutory claims, and we have cited a number of cases holding that violations of the insurance code do not give rise to a private right of action. Now, the plaintiff cites the case involving a state farm with a declaratory judgment that was faced on a breach of contract. It did not involve a private right of action under the insurance code. You already had it. This was based on the insurance policy. You already had the declaratory judgment. It had nothing to do with standing. The last sentence, and I want to draw the court's attention to it, the last sentence of the continuation privilege actually says that the insurance department, because at the time the statute was passed to the department as opposed to the director of insurance, shall enforce the provisions of this section, including provisions relating to self-insured health insurance. So here we have the general assembly specifically saying that it is the obligation of the director of insurance. The fact that counsel wrote a letter to the director of insurance in 2015 and said, please enforce it, and the department of insurance said by way of reply that we're not going to get involved is, to me, inaction consistent with the fact that there was no violation of the statute. The insurance code gives the director of insurance broad enforcement powers to investigate, make rules, institute proceedings for enforcement. If the general assembly intended to supply a private remedy, it could have done so, and its silence counsels the strongest negative influence. The plaintiff's briefs really are lacking in that the insurance code gives rise to an implied right of action. So if there's no express right of action, there's no implied private right of action, they've got nothing left as far as standing under the insurance code. So Ms. Stewart says that Marconi. Yes. Marconi did. Marconi, Marconi. Excellent. This is important because you know the briefs do talk about Marconi in some ways. In Marconi, plaintiffs were suing based upon rights that vested under a cost of bargaining agreement that provided benefits above and beyond what would have been the floor established by the insurance code. This is the opposite case. They don't have a cost of bargaining agreement. Question was asked, are you relying on a cost of bargaining agreement? Answer came back, no, we're not relying on a cost of bargaining agreement. That backs up Marconi right there. If you remember in Marconi, the court wound up reversing the remanding on the breach of contract claim. It never addressed any type of statutory claim that was based on a private right of action. It was this city that was trying to rely on the insurance code as setting a ceiling that could not, that you could not go above and beyond. And all the appellate courts in our district held was that's before and if they got rights under a cost of bargaining agreement, you'd be under a cost of bargaining agreement above and beyond what the statute is. Well, here we don't have a cost of bargaining agreement. We have the three agreements from the police, the firefighters, and the city employees in the record and they show that the retirees have no such right. That the rate was established that the employees paid 15 percent and the city will pay 85 percent. And we have the resolutions in the record that show for each year between 2007 and 2011 that we paid 85 percent for active employees and we paid 85 percent for retirees whose monthly pension benefit was about $1,600. And we required those making or receiving more than $1,600 a month to pay a slightly greater share of the total cost of the health insurance. But the important thing is, the important thing is that the total cost if you combine the employer's share and the employee's share was the same for retirees as it was for active employees. There was no violation of the statute because the total cost for both shares for retirees paid by the city and by the retirees is the same as it is for active employees. There was no violation. You know, I want to also address, the council made the argument that back in 2001 there was a resolution where they were promised to have the same exact coverage at the same exact cost at the same exact percentage as active employees. Well, this resolution says nothing about health insurance. It says nothing about it at all. It talks about the early retirement program. That's what it was based on. But it says nothing about health insurance in this resolution. Let me ask you this question, council. Tying to the tree, so to speak, I did with Ms. Stewart and said, isn't the problem here the plaintiff sued because they're claiming the city promised to pay the same rate in health insurance as they pay for active employees. But the problem is that was never committed to writing. And I think that's a serious problem. On the other hand, aren't they correct that there were representations to this effect made by the city? And secondly, if that's true, isn't that something which should be troubling to us and to you? Because it's bad form to have representations on important matters made by the city to its and what was alleged here is that Bill Petrie was the one who spoke at this informational meeting back in 2001. Bill Petrie is not Bill Petrie is not alleged to be affiliated with the city. Who is it? I'm sorry. Who is he? And why was he there? According to the affidavit in the record, he is employed by the Illinois Municipal Retirement Fund, the IMRF. He is not employed by the city. Whether under whose auspices was he speaking to the employees? He was talking to city employees. He couldn't. He certainly couldn't talk to the police and the firefighters because they are in a separate they're in a separate category. Go ahead. Bill Petrie is not alleged to either have a binding authority or to bind the city to any type of promise. And if you look at it. Let me back off for a moment. Okay. Bill Petrie. Under whose auspices was he speaking? How did he happen to be there? Did the city say come on in Mr. Petrie and talk to these people? Talk to them about early retirement. Did the city invite him? The complaint is not alleged, but I assume that there was a meeting set up and he was probably invited. Sure. Okay. It would have to be. Isn't that a bit troubling? The city invites this guy to come in and explain to its employees how this is going to work. He makes representations under the city's auspices. They invited him. And then they say, who is this guy? Don't come whining to us about it. Bill Petrie, he has no authority. And there is nothing. I agree with what you're saying about representations, but, and the representations were only oral. And there's nothing. You're right. There's something in writing the questionnaire, the questionnaire that they're attached to their complaint. A couple of questions talked about health insurance. There's no answers. No answers in writing. It's blank. I think the representations made or claims made that this is what Petrie said. Oral? Yes. Like Underwood v. City of Chicago? Well, no, no. Don't get me wrong. I understand they're oral. Right. But isn't it troubling that he made them? No one corrected him. The city invited him to make them. Well, he denied. Okay. First of all, if you go to the affidavit, he denied making them. But we never got that far. That's the thing. I mean, certainly, you know, if someone is talking about retirement, and they come in to talk about what benefits are due for early retirement, that is a serious situation. I'm not up here to tell you that's not a serious situation. But what I'm telling you is there is nothing in this case. There's nothing under the law. There's nothing under the statute that shows that anyone was misled. And, Rob, it's true that Petrie made these representations orally. They were misled. He denied making them. See, that's how I began the question. Yeah. If it's true. If it's true. They claim it, right? Okay. If it's true. If, in which case, the affidavit is false, too. But assuming the affidavit is true? Well, sometimes we have disagreements about how people recall things. Well, if we, that's true. So if it were true, they were misled. Okay. That's true. All right. And to be able to recover under the law, there are certain requirements that have to be met. And the statute of clause, which is where I think you began the argument with the opposing counsel, certainly negates any oral contract, because lifetime benefits are of an indefinite duration, cannot be performed in a year. So what's your position on the first question they asked, and namely, it seems to me, if the statute of clause were to apply in this case, I don't know how any claims can survive it. You know, that's, I've said, counsel's table, thinking about that, and I think that is a valid point as to everything. I do think with the statute, I think you would have to say there's no private right of action because, because, yeah. Go ahead. If you're claiming a private right of action under statute, I guess that's different from the statute of proclaims with anything else. Right. Oh, I agree. Because if you go to the other claims, even, we haven't talked about the pension protection claim, but even that has to be based upon some type of enforceable contractual relationship. So, as far as unjust enrichment, that has to be, which I didn't talk about yet, but even that claim has to set forth some type of independent basis. Some type of basis for recovery, and if the statute of clause knocks out the contractual claim, and if they don't have standing to pursue a private right of action, and if the documents are lacking the essential terms to create a non-oral type of contract, they've got to come up. Or at least, you know, that would be our position. Although, I can certainly talk about some of these claims at greater length, if the court has no further questions. I see that, counsel. Then, for all the reasons set forth in our brief and today's argument, we ask you to speak to the statement made by Closing Counsel regarding the implied private right of action, and whether you can assert that at the trial court, and how it is essentially a waiver of that issue. However, I would point to the fact that what the research speaks about is to consider any arguments in order to make its determination in the interest of justice. So, I would ask the court to consider the issue of the implied private right of action. Further, counsel pointed to the language of the fireman's continuance privilege, wherein he stated that the division of the insurance of the Department of Financial and Professional Regulation shall enforce the provisions of the That language is specifically left out of both the police officers and the municipal employees' portions of the statute. I think that silence speaks volumes. I think that it does show that there is a private right of action under the statute. Regarding the other causes of action of the plaintiffs, and specifically the unjust enrichment claim, there were arguments made by Closing Counsel regarding the fact that Mr. Petrie stated in an affidavit that he didn't make those statements. I would note that the causes of action for contract breach, unjust enrichment, promissory staffle, all of those were dismissed according to 615. The 615 dismissal requires that the court review the evidence in the light most capable to the plaintiffs. If the court is doing so, then the court has no option but to accept the plaintiff's position that those statements were in fact made to them, whether Mr. Petrie refused them or not. Regarding the causes of action for unjust enrichment, the arguments made by the defendant in their brief rely heavily on a case which surrounds the issue of restitution and adds additional requirements. I think the language in my reply brief, which I quote very clearly to the union station case, refutes that case, clearly showing that it's not the law. I would ask that the court reverse and remand all of the issues in the plaintiffs' brief. Okay, thank you counsel, court, plaintiffs' member, and your adviser.